OPINION OF THE COURT
Phoebe K. Greenbaum, J.
The issue before this court, which is one of first impression, is who bears the liability where moneys are deducted from a father’s weekly paychecks pursuant to a payroll deduction order but are not paid to the mother via the court’s support collection unit because of a fellow employee’s embezzlement of the deducted sums.
The relevant facts are as follows. In September, 1980, a payroll deduction order was entered in the amount of $70 per week. Said sum represented $50 for the support of the parties’ two children, $10 toward arrears of $160, plus $10 to the Tolstoy Foundation for a family indebtedness for airfare to this country.
In January, 1982, the respondent petitioned the court for a modification of the support order on the grounds that the arrears were paid in full in July, 1981 and $260 was collected in excess payments; the debt to the Tolstoy Foundation was paid in full and $370 was collected in excess payments; the parties’ older daughter was working and was self-supporting; and the petitioner was employed with earnings in excess of those of the respondent.
*743 Both parties now agree that the amount in question actually totals $1,750. The respondent attempted to obtain said shortage from his former employer (he left his employment in April, 1982) without success. He found that the business had been closed as a result of the theft of substantial sums of money, including the respondent’s weekly support payments of $70, by the company’s office manager.
By order to show cause, the respondent asked the court to have Peter Perchuk, president and stockholder of SVP Kitchen & Bathroom Design, Inc., his former employer, punished for contempt for his failure to transmit the moneys deducted from the respondent’s wages. On the return date of the order to show cause, Mr. Perchuk testified that although he had no personal knowledge he assumed that $70 had been deducted weekly from the respondent’s salary. He further testified that the office manager’s actions caused the collapse of his business and that the company had no money to remit to the support collection unit.
The parties were directed to submit memoranda of law on the question of which party should bear the loss resulting from the alleged criminal acts of the respondent’s fellow employee. All papers were considered by the court in reaching its decision.
The respondent argued two points. First, he stated that by requesting a payroll deduction the petitioner made the employer her agent for the purpose of making the deductions. Second, he noted that case law established his position that having had the money withdrawn from his salary he was no longer responsible for a new payment of the same liability or obligation. Specifically, the respondent likened a payroll deduction order to an income execution under CPLR 5231. Pursuant to that statute, if the garnishee fails to deduct the appropriate moneys, the judgment creditor may commence a proceeding against the garnishee for accrued installments. (See, e.g., Franklin Nat. Bank of Long Is. v Lynch, 29 Misc 2d 1039; Matter of Schwartz Tire Corp. v Gershon, 160 Misc 439.)
Furthermore, according to the respondent, a similar result was reached in Matter of Gordon (2 Bankruptcy Rptr 641). In that case, a bankrupt company deducted $40 per *744 week under a section 49-b of the Personal Property Law order for eight weeks from the wages of an employee and sent the money to the Probation Department which issued a check on behalf of the employee’s spouse and children. When the company’s check was subsequently dishonored, the Probation Department, in seeking to recover the $320, did not have a priority wage claim because the deduction was not money directly due to the wage earner in back wages. Rather, upon payment by the company of the wage deduction to the Probation Department, that deduction forthwith became due and owing to the persons for whom such money was to be paid, namely, the wage earner’s dependents.
In her memorandum, the petitioner labeled the respondent’s agency argument a “red herring”. The court must agree with the petitioner in this instance. While the respondent asserted that an agency relationship was established when the petitioner requested the payroll deduction order, the petitioner denied any such request. Rather, she stated that the institution of the payroll deduction order was a direct result of the respondent’s failure to make three consecutive support payments. The statutory remedy for his defaults is a payroll deduction order pursuant to section 49-b of the Personal Property Law, which the court ordered. Whether the petitioner asked for the order or the court directed it due to the respondent’s three defaults is irrelevant to the broader question involved herein, i.e., who bears the loss.
The petitioner also argued that the analogy drawn by the respondent to an income execution is inappropriate and again the court is compelled to agree. CPLR 5231 (subd [e]) expressly creates a cause of action in a judgment creditor against the garnishee who fails to make payment to the Sheriff. An income execution did not exist at common law and in order to give teeth to the procedure it was necessary for the Legislature to enact subdivision (e) of the statute. A corresponding right does not exist under the Personal Property Law or the Family Court Act against an employer who fails to remit wages deducted under a payroll deduction order.
*745 Finally, the petitioner argued that the respondent’s cases are not germane to the question involved in the instant case. The only case this court finds it necessary to discuss in detail is Matter of Gordon (supra). The petitioner attempted to distinguish this case by calling its fact pattern unique. The Bankruptcy Court held that upon payment by the employer of the wage deduction to the Probation Department that deduction became due and owing in the wage earner’s dependents. (Matter of Gordon, supra, p 643.) Implied in the opinion, according to the petitioner, is the finding that until payment by the employer the payroll deduction moneys were not due and owing to the beneficiaries.
The petitioner found this to be in accordance with subdivision 4 of section 111-h of the Social Services Law which reads: “Any and all moneys paid into the support collection unit pursuant to an order of support made under the family court act, where the petitioner is not a recipient of public assistance, shall upon payment into such support collection unit be deemed for all purposes to be the property of the person for whom such money is to be paid.” Subdivision 5 of section 111-h provides for return to the person who paid the funds where such funds have remained unclaimed in the possession of the support collection unit for at least two years. If, argued the petitioner, the respondent retained an interest or the funds remitted to the support collection unit, he must have a stronger right to the money deducted from his pay and not remitted to the support collection unit.
Although this court recognizes the legitimacy of the petitioner’s interpretation of Matter of Gordon (supra), the court finds that in the interests of fairness her reading of the case does not go far enough. As the Bankruptcy Court stated: “That deduction was not ‘money directly due to [the wage earner] in back wages’ ”. (Matter of Gordon, supra, p 643.) In other words, the payroll deduction funds were not considered wages owed to the respondent, but rather were considered money due and owing the petitioner and the children.
The petitioner’s emphasis on the word “payment,” as noted above, appears to this court to be misplaced. In *746 Matter of Gordon (supra) the actual payment by the employer of the wage deduction to the Probation Department did take place. In the instant proceeding, although the payment was never made by the employer, the weekly $70 was deducted and would not be considered part of the respondent’s wages.
The court finds that the equities lie with the respondent in that the payroll deduction on which he relied in good faith was made week after week. As the Probation Department was not given a priority wage claim in Matter of Gordon for moneys it paid out to the wage earner’s dependents, the petitioner herein is likewise unable to enforce her claim against the respondent. In both proceedings, the crux of both courts’ findings is that the deduction was not one owing to the wage earner. The petitioner’s proper remedy is to seek to recover illegally held funds from the employer and the errant office manager.
The court must mention one final point. It seems that the petitioner did not take any action during the time that she was not receiving her weekly $70 check from the support collection unit. The nonpayment of $1,750 to the petitioner and the embezzlement of the moneys by the office manager did not come to the court’s attention until the respondent instituted a proceeding for a downward modification. Whether this inaction rises to the level of laches was not brought before the court. However, assuming, arguendo, that the petitioner was entitled to recover the embezzled payments from the respondent, the court is of the opinion that were the respondent to invoke the defense of laches he would successfully bar such recovery.
Laches is defined as a lapse of time plus circumstances from which a party may be prejudiced (35 NY Jur, Limitations and Laches, § 3). It is textbook law that the doctrine of laches requires more than the mere lapse of time in failing to assert one’s legal rights. There must also be established circumstances showing that the respondent was prejudiced by that failure. (Matter of Arlene W. v Robert W., 70 Misc 2d 1041, 1043.) When, knowing his or her rights, a party takes no step to enforce them until the condition of the other party has, in good faith, become so changed that the other party cannot be restored to his or *747 her former state, if the right be then enforced, delay becomes inequitable and operates as an estoppel against the assertion of the right. (Augustine v Szwed, 77 AD2d 298, 302; Glenesk v Guidance Realty Corp., 36 AD2d 852; 36 NY Jur, Limitations and Laches, § 153 et seq.)
Applying the above principles to the facts herein, this court must conclude that the petitioner wife was guilty of laches in failing to institute an enforcement proceeding when the weekly support payments ceased. At the onset of the payroll deduction order, the petitioner received regular payments. Yet at the time that the respondent brought this proceeding for a downward modification, she had not received payments for six months. Moreover, as the facts of the embezzlement came to light, it was apparent to the court that any attempt by the petitioner to enforce the support order at this time would be prejudicial to the respondent. The petitioner knew that she had the right to institute an enforcement proceeding, as she had done in the past, but she took no steps to do so until the respondent’s condition, in good faith, became so changed by the office manager’s acts of embezzlement that he could not be restored to his former state. The fact that the petitioner sat on her hands to the detriment of the respondent would act as an estoppel against any assertion of her right to recover the lost support payments.
The temporary order of $10 per week is continued. The clerk of the court is directed to calendar this case for a work report on December 21, 1982 in Part III.